**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**DANA BEECHLER,**

        **Petitioner,**                            **CASE NO. 2:11-CV-696**
                                                        **JUDGE MARBLEY**
        **v.**                                **MAGISTRATE JUDGE KING**

**DEB TIMMERMAN-COOPER, WARDEN,
LONDON CORRECTIONAL INSTITUTION,**

        **Respondent.**

**ORDER and
<u>REPORT AND RECOMMENDATION</u>**

Petitioner, a state prisoner, brings this action for a writ of habeas corpus pursuant to 28

U.S.C. 2254.  This matter is before the Court on the *Petition*, Doc. No. 1, Respondent's *Return of*

*Writ*, Doc. No. 8, Petitioner's *Traverse*, Doc. No. 11, and the exhibits of the parties.  Petitioner's

*Motion to Invoke the Prison Mailbox Rule*, Doc. 12, is **GRANTED.**  For the reasons that follow, the

Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**FACTS and PROCEDURAL HISTORY**

The Ohio Second District Court of Appeals summarized the facts and procedural history of

this case as follows:

> Beechler came to the attention of Sergeant Robert Tate, of the
> Springfield Police Division, at about 2:00 a.m. on January 20, 2009.
> Both Beechler and Tate were stopped at a red light. Tate had prior
> knowledge that Beechler's driver's license was under suspension. Tate
> was behind Beechler. When the light turned green, Beechler pulled
> into the intersection to the left of center. When Beechler's car reached
> the other side of the intersection, where the double yellow line
> resumed, at least half of Beechler's car was over the double yellow
> line.
>
> Beechler pulled back to the right of the double yellow line,
> positioning his car correctly in the lane. Beechler moved into a right-

turn lane and began to turn right at an intersection, but did not signal his turn until after he began turning.

At this point, Tate confirmed that Beechler's driver's license was suspended, and checked the license plates on the car Beechler was driving. Tate determined that the license plates were issued for a Cadillac, but Beechler was driving an Oldsmobile. Tate initiated a traffic stop. There were two passengers in Beechler's car, one in the front passenger seat, and one in the back.

Tate described what happened thereafter as follows:

"Q. What did you observe about the defendant?

"A. In speaking with the defendant I noted that he had displayed slurred speech, glassy eyes. As I stood outside the driver's door, through the open door I could easily detect the odor-actually a strong odor of an alcoholic beverage coming from inside the vehicle. The defendant admitted that he was suspended and that he had been drinking.

"Q. Did you observe anything inside the vehicle?

"A. I did observe a twelve pack or a cardboard container for Budweiser beer and several beer cans on the floor.

" * * * *

"Q. When he was asked out of the vehicle, did you observe anything about him?

"A. He was not uncooperative but slightly agitated. We moved to the back of the cruiser-or the back of his vehicle and spoke a little bit and then he was placed in the cruiser.

"Q. And why was he placed in the cruiser?

2

"A. He was placed in the cruiser because he was placed under arrest for D.U.I. In speaking with him I informed him that I believed that he had been drinking and possibly had too much to drink. I gave him the option of-I requested field sobriety tests.

"I gave him the option of performing them at that location or going downtown to get under cover and out of the elements and conduct them at a more friendly environment.

" * * * *

"Q. How did you specifically perform the field sobriety tests? Just take us through step-by-step what you did, please.

"A. First, we did the HGN test and then the walk-and-turn and then the one-legged stand.

"Q. The HGN, what did you do? What clues did you observe?

"A. I observed six of the six possible clues on that test. All six.

"[There then ensued an extended discussion of the DVD, or CD-ROM, made from the cruiser video camera, which showed the field sobriety tests, among other things, and which was ultimately admitted in evidence.]

"Q. Sergeant, can you please describe in detail how you performed the horizontal gaze nystagmus test on the defendant on that evening?

"[Tate then described in detail how he performed the HGN test.]

"Q. Please tell us how you performed the walk-and-turn test on the defendant and what you observed from him.

"[Tate then described in detail the instructions for the walk-and-turn test.]

3

"Q. How did the defendant perform on that test and what did you observe during that test?

"A. For the specific clues that were noted that night I would have to see my form that I filled out-the impaired driver report.

"Q. Let's move onto [sic] the one-legged-stand test for now. Can you please describe how you performed that test that night and what you observe from the defendant?

"[Tate then described in detail his instructions for the one-legged-stand test.]

"Q. Do you remember how the defendant performed that test and what you observed?

"A. I do remember that I did see enough clues to indicate to me that he was impaired, but I don't remember specifically what clues were noted.

"[The impaired driver report was identified and marked, and Tate reviewed it.]

"Q. Having reviewed that impaired driver report, is your memory now refreshed as to what you observed?

"A. Yes.

"Q. Can you tell me what you observed from the defendant that evening?

"A. On?
"Q. On the walk-and-turn test.

"A. He was unable to maintain the instructional position which is-

4

"(And, thereupon, a DVD was played in open court in the presence of the defendant.) [FN1]

FN1. It appears that an unsuccessful attempt had been made to play the DVD at an earlier point during the hearing, which perhaps explains the abrupt interruption of Tate's testimony to play the DVD after mechanical difficulties in the playing of the DVD had been overcome.

"Q. Again, can you please tell us what you observed from the defendant on the walk-and-turn test that evening?

"A. He was unable to maintain the instructional position as I gave the instructions. He was unable to keep his left foot, heel-to-toe behind his right foot. When he was instructed to begin the test, he failed to count the steps out loud.

"Going forward he crossed his left foot over his right foot on the third step, meaning he did not stop with his left foot directly in front of his right foot. Going forward he took ten steps forward instead of the instructed nine, which also means that when he stopped, his right foot was forward, which means that when he made his turn, he turned incorrectly because he turned to his left not to the forward foot side.

"He did not pivot three steps. He spun. He then stopped and asked if he was supposed to go back. He was told he was supposed to return. Again, he took ten steps instead of nine and he stopped and spun.

"(And, thereupon, a DVD was played in open court in the presence of the defendant.)

"Q. Can you please tell us what you observed from the defendant on the one-legged-stand test?

"A. The subject chose to raise his left foot. When he did so, he dropped it back to the ground before he was even able to complete the first count. He didn't count as instructed as one thousand one, one thousand two. He just counted one, two and so on.

5

"At count three he raised his arms. He did not look at his foot or point his foot as instructed. He reached to count nineteen and dropped his foot. He then re-lifted his left foot and immediately dropped it before counting again. When he did begin counting again, he didn't start where he left off. He restarted at one. He raised his arms again and was finally told to stop by count ten.

"Q. Based on your observations of the defendant and the standard field sobriety tests you performed, did you form an opinion as to whether the defendant was intoxicated that evening?

"A. Yes. The excessive on the clues [sic] indicated to me that the subject was impaired or under the influence of alcohol and/or drugs.

"Q. Was he placed under arrest at that time?

"A. Yes."

Beechler exercised his statutory right to decline to take the breath test.

He was indicted on one count of OMVI in violation of R.C. 4511.19(A)(1)(a), having previously been convicted of a violation of division (A) of R.C. 4511.19, and one count of OMVI in violation of R.C. 4511.19(A)(2), having previously been convicted of a violation of division (A) of R.C. 4511.19. Each count included a specification that Beechler had, within twenty years of the offense, been previously convicted of five or more violations of R.C. 4511.19(A) or (B), or other equivalent offenses.

Beechler moved to suppress the evidence, contending that it was the result of an unlawful search and seizure. Following a hearing, his motion to suppress was overruled.

Beechler was tried to a jury, which found him guilty of both offenses and specifications. The convictions were merged, and the State elected to proceed on the second count of the indictment, which

6

alleged a violation of R.C. 4511.19(A)(2).

The conviction carried a possible sentence of one, two, three, four or five years. So did the specification. By statute, the two sentences must be served consecutively. R.C. 2929.13(G)(2). The trial court imposed the maximum, five-year sentence on the offense, and the maximum, five-year sentence on the specification, to be served consecutively. From his conviction and sentence, Beechler appeals.

*State v. Beechler*, No.09-CA-54, 2010 WL 1731784, at *1-4 (Ohio App. 2nd Dist. April 30, 2010).

Petitioner raised the following assignments of error on direct appeal:

1. THE TRIAL COURT ERRED IN FINDING THE OFFICER HAD PROBABLE CAUSE TO INITIATE A TRAFFIC STOP OF THE DEFENDANT.

2. THE TRIAL COURT ERRED IN FINDING PROBABLE CAUSE TO ARREST THE APPELLANT.

3. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTOR TO INCLUDE TWO MISLEADING STATEMENTS IN CLOSING ARGUMENTS.

4. APPELLANT'S CONVICTION OF OPERATING A VEHICLE WHILE UNDER THE INFLUENCE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

5. THE TRIAL COURT ERRED IN IMPOSING MAXIMUM, CONSECUTIVE SENTENCES UPON APPELLANT.

*See id.* On April 30, 2010, the appellate court affirmed the judgment of the trial court. *Id.* On

August 25, 2010, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v.*

*Beechler*, 126 Ohio St.3d 1550 (2010).

7

Meanwhile, on July 2, 2010, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). He asserted that he had been denied the effective assistance of appellate counsel based on his attorney's failure to raise the following claims on appeal:

1.  Trial counsel was ineffective for not suppressing the evidence that was marked as evidence for a Kevin Null when the defendant did not have a co-defendant.

2.  Trial counsel was ineffective for not requesting a new trial when newly discovered evidence warranted a new trial making trial counsel ineffective.

3.  Trial counsel was ineffective for not calling witnesses that were needed to aid the defendant's case and also show the defendant's condition and health.

4.  Trial counsel was ineffective for not contesting or objecting during sentencing that the defendant was overly fined making the defendant's judgment non-final.

5.  The trial court abused its discretion in not granting defendant's motion to suppress.

6.  The jury lost its way when it found defendant guilty of the specification when no evidence was presented about the specification.

*Exhibit 16 to Return of Writ*. On October 15, 2010, the appellate court denied Petitioner's Rule 26(B) application. *Exhibit 18 to Return of Writ.* On November 19, 2010, the appellate court denied Petitioner's motion for reconsideration. *Exhibit 21 to Return of Writ.* On March 16, 2011, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Beechler*, 128 Ohio St.3d 1428 (2011).

On August 3, 2011, Petitioner filed the *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

    1.      The trial court committed plain error when it allowed the State to introduce evidence that was prejudicial to the appellant dealing with the appellant's record.

             The trial court allowed the defendant's record to be addressed without the defendant taking the stand to help aid in his conviction violating his right to trial constitutionally.

    2.      The trial court erred in finding the officer had probable cause to initiate a traffic stop of the defendant.

             The officer did not have a reasonable suspicion to stop the defendant and the evidence supported this and the courts overlooked this fact due to the defendant's past record. [D]oing so violated the defendant's rights to be free from illegal stops and searches.

    3.      The trial court erred in finding probable cause to arrest appellant.

             The officer admitted that the tests that were conducted to determine the defendant's sobriety were not done right and he only felt that the defendant might not have had a license but was not sure[.]  The officer lied many times in the proceedings for his actions all of which supports that the officer did not have probable cause to arrest[.] The court did not consider the many lies that were addressed by the defendant and allowed the officer to change stories many times thereby violating the defendant's rights of due process.

4.      The trial court erred in allowing the prosecutor to include two misleading statements in closing arguments.

        The remarks that were made by the prosecutor were prejudicial and violative to the defendant and could have not been cured but for a mistrial.

5.      Appellant['s] conviction of operating a vehicle while under the influence is against the manifest weight of the evidence.

        The evidence supported at trial was one sided and the real issues were not addressed[.] The officer gave many reasons for him arresting the defendant although the defendant was charged with an OVI offense the officer gave his reason for the arrest being the defendant not having a license and admitted the defendant was arrested for that before he was taken to perform the sobriety [tests,] a clear showing that the officer was out of line to request the defendant to perform the test giving the reason he was already arrested.  The officer['s] story changed a few more times for his reasoning.

6.      The trial counsel was ineffective for not suppressing the evidence that was marked as evidence for a Kevin Null when the defendant did not have a co-defendant.

        The defendant's appellate counsel was ineffective for not filing ineffective counsel on trial counsel for not objecting to evidence being used against the defendant that was used to convict another person and that was marked as evidence for a Kevin Null.  Had this  been objected to the outcome may have been changed[.] This evidence was not relevant to the defendant's case in any way, but to prejudice the defendant[,] violating his right to trial.

7.      Trial court abused its discretion in not granting defendant's motion to suppress.

The suppression hearing was based on the sobriety test being done wrong but during the motion to suppress hearing it was clear that the officer did not have standing to conduct the test based on his own findings and position.  The record clearly shows that the officer lied and forced the defendant to submit to the test and due to the record supporting this the court should have granted the motion to suppress in full.  The defendant's right to trial [was] violated.

8.      The jury lost its way when it found the defendant guilty of the specification when no evidence was presented about the specifications.

The jury heard no evidence about the defendant's record yet was instructed to find the defendant guilty of past convictions.  This violated the defendant's right to trial and destroy[ed] the reason to hold a trial after months of arguments[.] The court of appeals agreed that no evidence was presented about the defendant's record but refused to do anything about it because [] the defendant's past record would have supported the conviction, the court of appeals was wrong for the reason that a defendant being convicted of an offense without evidence of such crime is unconstitutional no matter the truth of the reasoning.

Respondent contends that Petitioner's claims are procedurally defaulted or without merit.

**PROCEDURAL DEFAULT**

Respondent argues that Petitioner has waived this Court's consideration of a number of habeas claims.  In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do

11

so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless,* 459 U.S. 4, 6 (1982) ( *per curiam* ); *Picard v. Connor,* 404 U.S. 270, 275-76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a Court must undertake a four-part analysis when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir.1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, the Court must decide whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court determines that the petitioner failed to comply with an adequate and independent state procedural rule, then the petitioner must demonstrate good cause for his failure to follow the procedural rule as well as actual prejudice from the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall,* 757 F.2d 94 (6th Cir.1985).

Respondent argues that Petitioner has waived claims one, six, seven and eight because he did not properly present those claims in his appeals to the state courts.

In claim one, Petitioner asserts that the trial court committed plain error by permitting the State to introduce prejudicial evidence regarding his prior record when he did not testify.[1]  Petitioner did not raise this claim in the Ohio Court of Appeals, but presented this claim in the first instance on appeal to the Ohio Supreme Court.  *See Exhibit 13 to Return of Writ*.  The Ohio Supreme Court, however, does not ordinarily consider claims not raised in the appellate court below.  *See Fornash v. Marshall,* 686 F.2d 1179, 1185 n. 7 (6th Cir.1982) (citing *State v. Phillips,* 27 Ohio St.2d 294, 302 (1971)).  Petitioner thus did not preserve claim one for federal habeas corpus review.

In claim six, Petitioner asserts that he was denied the effective assistance of trial counsel because his attorney failed to object to admission of evidence marked for a person by the name of Kevin Null.  In claim seven, Petitioner asserts that the trial court abused its discretion by failing to grant his motion to suppress the results of the sobriety test.[2]  In claim eight, Petitioner asserts that the jury lost its way in finding him guilty of prior OVI convictions, the specification with which he was charged.  These claims all are readily apparent from the face of the record, and therefore should have been raised on direct appeal, but were not.  Moreover, Petitioner now may no longer present these claims to the state courts under Ohio's doctrine of *res judicata*.  *See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail,* 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967). The state courts were never given an opportunity to enforce the procedural rule at issue due to the nature

---

[1]  To the extent that Petitioner alleges that he was denied the effective assistance of trial counsel because his attorney agreed to stipulate to the fact of Petitioner's prior convictions, *see Traverse*, Petitioner failed to raise this issue in the state courts and he has, therefore, waived this claim for review in these proceedings.

[2]Petitioner did argue on direct appeal, as he now does in claim seven, that the trial court erred in denying his motion to suppress.  However, and as will be discussed *infra*, to the extent that he intends to present in claim seven the same issue that he raised on direct appeal, this Fourth Amendment claim cannot form the basis of federal habeas corpus relief.

of Petitioner's procedural default.[3]

The Court finds that Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson,* 501 U.S. 722, 732-33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia,* 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348-351 (1984)); *see also Barr v. City of Columbia,* 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir.2006); *Coleman v. Mitchell,* 268 F.3d 417, 427-29 (6th Cir.2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins,* 209 F.3d 486, 521-22 (6th Cir.2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir.1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata,* to review the merits of claims because they are procedurally barred. *See State v. Cole,* 2 Ohio St.3d at 112; *State v. Ishmail,* 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the

---

[3]Petitioner also argues that he preserved claims six through eight for federal habeas corpus review by raising these claim in Rule 26(B) proceedings. *See Traverse.* This Court disagrees. Under Ohio's Rule 26(B), an Ohio appellate court will consider only claims of ineffective assistance of **appellate** counsel. Petitioner's Rule 26(B) proceedings did not properly present to the state courts his claims of ineffective assistance of **trial** counsel.

earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Respondent also argues that Petitioner has waived this Court's review of the merits of claim four. In that claim, Petitioner alleges that he was denied a fair trial because the prosecutor made improper statements during closing argument. Petitioner raised this claim on direct appeal; however, the state appellate court reviewed the claim only for plain error because Petitioner failed to object at trial:

> Neither of the statements of which Beechler now complains was the subject of an objection in the trial court. Therefore, this assignment of error is governed by the plain-error standard of appellate review.
>
> During the voir dire of the jury, defense counsel brought out, in two colloquys, that Beechler had not been involved in an accident and no one was hurt:
>
> "What if I told you that there was no accident in this case? Nobody went to the hospital. Does that comfort you at all or give you more peace of mind about being able to be a juror in this case?
>
> " * * * *
>
> "[To a different prospective juror] Does it give you any comfort or peace of mind that there is no accident in this case? That no one went to the hospital?"
>
> In closing argument, the prosecutor alluded to this:
>
> "But there was a comment made when we were picking the jury about there not being an accident in this case. There was not an accident. The defendant does not seem to have been driving all that far. Nobody is really hurt. But that's just because we are lucky. The

15

defendant was caught before he was able to hurt anyone. Keep that in mind. * * * *."

Beechler argues that in making this comment, the prosecutor was expressing his "personal belief that in the future, [Beechler] will drive and harm somebody," in an improper attempt to appeal to the emotions of the jurors. We do not read the prosecutor's comment as making a prediction, but as simply noting that Beechler, an impaired driver, was caught before an accident could occur. There was evidence that Beechler was impaired, and he had not yet, at the time of his apprehension, caused an accident. We see nothing improper in commenting on these facts, which find support in the evidence in the record. In general, a prosecutor, in an attempt to avoid the possibility of jury nullification, may point out to a jury, in closing argument, that the offense with which the defendant is charged bears a serious risk of harm, and is therefore not trivial, even though that risk of harm did not materialize in the particular case.

The second prosecutorial comment of which Beechler now complains was a comment on his refusal to take the test:

"And very important in all of this is that the defendant refused that breath test. On the one hand, it's an element of one of the offenses you are required to find. And also it's evidence that he knows he was under the influence of alcohol that night. He had the opportunity to prove he was not under the influence of alcohol, and he did not take it. Instead, he refused that test.

"If he wasn't drinking, he could have taken the test. He could have offered-He could have taken the breath test and proved that he was not under the influence of alcohol and he did not do that. * * * *.

" * * * *

"He's under the influence of alcohol. He refused the test that would have proven otherwise, which it wouldn't have in this case had he taken it. He knew that. That's why he didn't take the test."

Beechler contends that the fact that he refused the test does not support a reasonable inference that he was under the influence of alcohol. The Supreme Court of Ohio has held otherwise:

16

"Therefore, where a person has been arrested for driving while under the influence of alcohol and is requested by a police officer to submit to a chemical test of his or her breath but he or she refuses to take the test, and the reason given for the refusal is conditional, unequivocal, or a combination thereof, we approve the following jury instruction as set forth in 4 Ohio Jury Instructions (1993) 405, Section 545.25(10): 'Evidence has been introduced indicating the defendant was asked but refused to submit to a chemical test of his [or her] breath to determine the amount of alcohol in his [or her] system, for the purpose of suggesting that the defendant believed he [or she] was under the influence of alcohol. If you find the defendant refused to submit to said test, you may, but are not required to, consider this evidence along with all the other facts and circumstances in evidence in deciding whether the defendant was under the influence of alcohol.'" *Maumee v. Anistik,* 69 Ohio St.3d 339, 344, 632 N.E.2d 497, 1994-Ohio-157. (Bracketed material in original.)

*State v. Beechler,* 2010 WL 1731784, at *7-9.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker,* 224 F.3d 542, 557 (6th Cir.2000).

Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley,* 380 F.3d 932, 968 (6th Cir.2004), *cert. denied,* 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith,* 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir.2001); *Stojetz v. Ishee,* 2006 WL 328155 *12 (S.D. Ohio Feb.10, 2006).

A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams,* 380 F.3d at 968; *Hinkle,* 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the

17

state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle,* 271 F.3d at 244 (citing *Ylst, v. Nunnemaker,* 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Adams v. Bradshaw,* 484 F.Supp.2d 753, 771 (N.D. Ohio 2007).    This Court concludes that Petitioner has waived claim four for federal habeas corpus review.

In sum, Petitioner has waived claims one, four and six through eight for federal habeas corpus review.  He may still may obtain review of the merits of these claims if he establishes cause for his procedural default as well as actual prejudice from the alleged constitutional violations.

" '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

*Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir.2003).

The Court assumes that Petitioner submits, as cause for his procedural defaults of claims six through eight, the ineffective assistance of appellate counsel.  The ineffective assistance of appellate counsel can constitute cause for a procedural default if that claim has been presented to the state courts and is not, itself, procedurally defaulted.  *Edwards v. Carpenter,* 529 U.S. 446, 451-52 (2000), citing *Murray v. Carrier,* 477 U.S. 478, 488-89 (1986).  Because Petitioner did in fact present claims of ineffective assistance of appellate counsel to the Ohio courts, this Court will consider whether Petitioner's claims of ineffective assistance of appellate counsel are meritorious and therefore establish cause for the procedural defaults of Petitioner's claims six through eight..

The Ohio Court of Appeals rejected Petitioner's claim of ineffective assistance of appellate

18

counsel based on appellate counsel's failure to raise on appeal a claim that the jury lost its way when

it found him guilty of the specification of prior OVI convictions:

> Beechler's last proposed assignment of error – that the jury lost its way when it found him guilty of the specification of five OVI convictions in the prior twenty years and having a prior felony OVI – is without grounds.  Beechler argues that during the trial, the jury was never exposed to the evidence that the defendant had five prior convictions in the past twenty years.  Beechler further reasons that since the jury did not hear this evidence, the jury necessarily lost its way when it found him guilty of the specification.

> The specification is as follows: "that the offender, within twenty years of the offense, previously has been convicted of or pleaded guilty to five or more equivalent offenses."  O.R.C. 2941.1413.

> The trial record indicates that at several points during the trial the jury was exposed to evidence that Beechler had five prior OVI convictions in the past twenty years.  The trial transcript shows that both attorneys stipulated to this fact at the beginning of the trial.  Trial Transcript at 71.  The stipulation being that the defendant, "has five priors in twenty years and prior felony OVI."  *Id*.  The judge instructed the jury concerning the stipulation during trial proceedings at the end of the State's case in chief, stating, "[l]adies and gentleman, the attorneys have stipulated to a fact that you are to accept to be true, and I believe the stipulation is that the defendant in this case, Dana Beechler, does have a prior felony conviction for OVI; and that he also has five prior offenses for OVI within the last twenty years."  *Id*. at 172.  The judge further informed the jury of the stipulation during the jury instructions, advising the jury that, "[e]vidence was introduced that the defendant has prior convictions for OVI.  That evidence was admitted because it proves an element of the offenses in the indictment."  *Id.* at 219.  Although not part of evidence, both attorneys also made comments during opening and closing statements that the defendant had prior convictions for OVI.  *Id*. at 68, 70, 198.

> The jury did not lose its way when it found the defendant guilty of the specification.  The facts supporting the specification were stipulated.  Because the jury must take any fact that is stipulated by both parties as a proven fact, the jury properly found Beechler guilty of the specification.

Beechler's appellate counsel was not ineffective for having failed to
raise this assignment of error.

*Exhibit 19 to Return of Writ.*

The state appellate court also rejected Petitioner's claim of ineffective assistance of appellate

counsel based on his attorney's failure to raise a claim that his trial counsel was ineffective for

failing to seek the suppression of evidence marked for one Kevin Null:

> Beechler's first proposed assignment of error is that trial counsel was
> ineffective for not suppressing evidence marked as evidence for
> Kevin Null. Beechler argues that the evidence collected at the time
> of his arrest should have been suppressed because it bore the name
> Kevin Null on the evidence tag. Beechler argues that because the
> evidence was collected in relation to the tampering with evidence
> charge against Kevin Null, it should not have been admitted in
> evidence against Beechler. Beechler further argues that in failing to
> get the evidence suppressed, trial counsel was ineffective.
>
> The Ohio Rules of Evidence, Rule 402, states, "[a]ll relevant
> evidence is admissible, except as otherwise provided by the
> Constitution of the United States, by the Constitution of the State of
> Ohio, by statute enacted by the General Assembly not in conflict with
> a rule of the Supreme Court of Ohio, by these rules, or by other rules
> prescribed by the Supreme Court of Ohio. Evidence which is not
> relevant is not admissible."
>
> During the trial, Police Sergeant Robert Tate testified that during the
> course of the traffic stop he observed that, "[t]here were beer cans in
> the floorboard in both the back and by the passenger seat and also
> what [he] believed was a twelve pack, a cardboard Budweiser beer
> container." *Trial Transcript* at 120. Sergeant Tate further testified
> that the evidence offered by the State was the box that he saw on the
> floor of the defendant's car. *Id.* The Sergeant also testified that
> Beechler appeared to have bloodshot eyes, and that the odor of an
> alcoholic beverage was coming directly from the defendant's breath.
> *Id.* at 121.
>
> The evidence collected from Beechler's car at the time of his arrest
> was relevant, admissible evidence at trial. The trial court did not err
> in allowing the evidence to be admitted. The box containing three
> full cans and one empty can of beer found in the defendant's car at

the time of arrest was relevant evidence at the trial for OVI, because it permits a reasonable inference that Beechler had consumed at least some of the beer.

We conclude that Beechler's first proposed assignment of error is without merit, and his appellate counsel was therefore not ineffective for having failed to assert it.

*Exhibit 19 to Return of Writ.*

The state appellate court rejected Petitioner's claim that his appellate counsel was

ineffective because that counsel failed to argue on appeal that the trial court abused its discretion

when it denied Petitioner's motion to suppress:

Beechler's proposed fifth assignment of error – that the trial court abused its d[iscretion] in not granting defendant's motion to suppress – was, in fact, raised in his original appeal. Beechler argues that the appellate counsel was ineffective because counsel failed adequately to raise the issue that the officer had no probable ca[u]se to stop Beechler.

We held previously in this case that, "[a] marked-lane violation is, by itself, justification to initiate a traffic stop, even without the added fact that an officer has confirmed that the driver is under a license suspension." . . . We are not aware of any argument that Beechler's appellate counsel could have made that would have persuaded us to come to a different result on this issue, nor has Beechler directed our attention to any such argument. Therefore, Beechler's appellate counsel was not ineffective in having [failed to make] this argument.

*Exhibit 19 to Return of Writ.*

The factual findings of the state appellate court are presumed to be correct.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

21

28 U.S.C. § 2254(e)(1). Further, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented.

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  In order to obtain federal habeas corpus relief, a petitioner must establish that the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, – S.Ct. –, 2011 WL 5299458, at *1 (Nov. 7, 2011)(quoting *Harrington v. Richter,* 562 U.S. ——, ——, 131 S.Ct. 770, 786–87 (2011).  This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v.Richter*, 131 S.Ct. at 786 (quoting *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)).  In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id*. (quoting *Yarborough v. Alvarado,* 541 U.S. 652, 664 (2004)).  Petitioner cannot meet this standard here.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 771 n. 14 (1970). The standard for

reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so serious
> that counsel was not functioning as the "counsel" guaranteed the
> defendant by the Sixth Amendment. Second, the defendant must
> show that the deficient performance prejudiced the defense. This
> requires showing that counsel's errors were so serious as to deprive
> the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington,* 466 U.S. at 687; *see also Blackburn v. Foltz*, 828 F.2d 1177 (6th

Cir.1987). "Because of the difficulties inherent in making the evaluation, a court must indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy." *Strickland,* 466 U.S. at 689.

To establish prejudice, it must be shown that there is a reasonable probability that, but for

counsel's errors, the result fo the proceedings would have been different. *Id*., at 694. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id*., at 697. Because

petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of

counsel, if the Court determines that petitioner has failed to satisfy one prong, it need not consider

the other. *Id.,* at 697.

The *Strickland* test applies to appellate counsel.  *Burger v. Kemp,* 483 U.S. 776 (1987).

Counsel must provide reasonable professional judgment in presenting the appeal.  *Evitts v. Lucey,*

469 U.S. 387, 396-97 (1985). " '[W]innowing out weaker arguments on appeal and focusing on'

those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective

appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes,* 463 U.S.

745, 751-52 (1983)). Of course, not every decision made by appellate counsel can be insulated from

review merely by categorizing it as strategic. The Court of Appeals for the Sixth Circuit has

identified the following considerations that ought to be taken into account in determining whether

counsel on direct appeal performed reasonably competently:

> A. Were the omitted issues "significant and obvious?"
> B. Was there arguably contrary authority on the omitted issues?
> C. Were the omitted issues clearly stronger than those presented?
> D. Were the omitted issues objected to at trial?
> E. Were the trial court's rulings subject to deference on appeal?
> F. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
> G. What was appellate counsel's level of experience and expertise?
> H. Did the petitioner and appellate counsel meet and go over possible issues?
> I. Is there evidence that counsel reviewed all the facts?
> J. Were the omitted issues dealt with in other assignments of error?
> K. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle,* 171 F.3d 408, 427-28 (6th Cir.1999). This list is not exhaustive and need not

produce a certain "score." *Id.* at 428.

As noted by the state appellate court, because defense counsel stipulated to Petitioner's prior

convictions, the prosecution was not required to prove those convictions to the jury, and Petitioner

cannot establish either that appellate counsel performed in a constitutionally ineffective manner by

failing to raise the claim on appeal or that he was prejudiced thereby.  Additionally, the Ohio Court

of Appeals concluded, as does this Court, that the beer cans found in Petitioner's car at the time of

his arrest were admissible under Ohio law as circumstantial evidence regarding his guilt and were

identified by police as evidence relating to Petitioner's arrest.  Finally, the appellate court correctly

noted that appellate counsel did, in fact, raise on appeal an issue regarding the trial court's denial

of his motion to suppress based on  alleged lack of probable cause.  Petitioner does not refer to, and

this Court cannot discern from the record, any potentially meritorious argument that his attorney

could have, but did not, raise in this respect.  The record fails to establish the ineffective assistance of appellate counsel.  Petitioner has therefore failed to establish cause for his procedural default of claims six through eight.  *See Edwards v. Carpenter*, 529 U.S. 446.

Where federal habeas claims have been procedurally defaulted, a federal habeas court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier,* 477 U.S. at 491; *see also Sawyer v. Whitley,* 505 U.S. 333 (1992). After review of the record, the Court does not deem this to be such a case.

Accordingly, this Court concludes that Petitioner has waived this Court's consideration of the merits of claims one, four, six, seven and eight.

## CLAIMS TWO AND THREE

In claim two, Petitioner alleges that he was convicted in violation of the Fourth Amendment because police lacked probable cause to initiate a traffic stop and reasonable suspicion for a stop. In claim three, Petitioner similarly alleges that his convictions violate the Fourth Amendment because police lacked probable cause for his arrest.  These claims fail to present issues appropriate for federal habeas corpus review.

Fourth Amendment claims cannot be considered in a federal habeas corpus action if the state courts provided "an opportunity for full and fair litigation" of those claims.  *Stone v. Powell*, 428 U.S. 465, 494–95 (1976); *Machacek v. Hofbauer.* 213 F.3d 947, 952 (6th Cir. 2000)(applying *Stone v. Powell* to habeas claim of illegal arrest).  In *Riley v. Gray,* 674 F.2d 522, 526 (6th Cir.1982), the United States Court of Appeals for the Sixth Circuit expressly held that Ohio's mechanism for the resolution of Fourth Amendment claims "is, in the abstract, clearly adequate." *Id.* at 526.  In the case

25

presently before this Court, the record indicates that Petitioner filed a motion to suppress evidence. The trial court denied that motion after a hearing, at which petitioner had the opportunity to present both evidence and argument. The appellate court thereafter affirmed the trial court's denial of Petitioner's motion to suppress on direct appeal.

Petitioner nevertheless argues he had no fair opportunity to raise his Fourth Amendment claims, because the trial court's conclusions were unreasonable, because the state courts misapplied federal law and used "flawed logic," and because police failed to follow standards of the "NHTSA" in conducting field sobriety tests.  *See Traverse.*  These arguments are not persuasive.

Petitioner's contention that the state courts misconstrued or misapplied the law, even if true, are insufficient to overcome the bar of *Stone v. Powell.  Brown v. Sherry*, No. 2:08-CV-11419, 2009 WL 7039909, at *6 (E.D. Mich. July 21, 2009).

> Under *Stone* the correctness of the state courts' conclusions is simply irrelevant. The courts that have considered the matter "have consistently held that an erroneous determination of a habeas petitioner's Fourth Amendment claim does not overcome the *Stone v. Powell* bar." *Gilmore v. Marks,* 799 F.2d 51, 57 (3d Cir.1986); *see also, Willett,* 37 F.3d at 1270 (citing cases). An argument directed solely at the correctness of the state court decision "goes not go to the fullness and fairness of his opportunity to litigate the claim[s], but to the correctness of the state court resolution, an issue which *Stone v. Powell* makes irrelevant." *Siripongs v. Calderon,* 35 F.3d 1308, 1321 (9th Cir.1994). As succinctly put by the Seventh Circuit, " 'full and fair' guarantees the right to present one's case, but it does not guarantee a correct result." *Cabrera v. Hinsley,* 324 F.3d 527, 532 (7th Cir. 2003).

*Id.*

Claims two and three fail to provide a basis for federal habeas relief.

## CLAIM FIVE

In claim five, Petitioner asserts that his conviction was against the manifest weight of the

evidence.[4]  This claim fails to present an issue appropriate for federal habeas corpus review.  The Due Process Clause does not provide relief for defendants whose convictions are against the manifest weight of the evidence, but only for those who have been convicted without sufficient proof to allow a rational trier of fact to find guilt beyond a reasonable doubt.  *Walker v. Engle*, 703 F.2d

---

[4]  The state appellate court rejected this claim as follows:

Beechler presented the testimony of his mother and his uncle. His mother testified that he had been at home since 7:00 p.m., about seven hours before he left home and was stopped, and that he had not been drinking during that time. His uncle, who was the front-seat passenger in the car, testified that he, Beechler's uncle, was the source of the Budweiser 12-can carton found in Beechler's car, and that he did not see Beechler drinking. Beechler's uncle had not been with Beechler for very long before the stop. He woke Beechler up to ask for a ride.

Beechler's mother's testimony was reasonably exculpatory; his uncle could only deflect the adverse inference represented by the beer cans in Beechler's car. A reasonable jury could choose not to credit a mother's exculpatory testimony.

Against this, the State had impressive evidence that Beechler was under the influence. The actual marked-lanes violation was not especially inculpatory, since a wide turn could happen to anyone, intoxicated or not, at an early morning hour of a bitterly cold night. But upon confronting Beechler, the officer saw glassy eyes, heard slurred speech, smelled a strong odor of an alcoholic beverage coming from the car, saw the beer cans, and heard Beechler's admission that he had been drinking. After Beechler got out of his car, the officer could tell that a "strong" odor of an alcoholic beverage "was coming directly from his breath."

The jury also had the audiovisual recording from the cruiser, which showed Beechler in the back seat while he was transported to the police station, where he underwent field sobriety tests inside the garage, as well as the field sobriety tests, themselves. We have watched this recording. Beechler's demeanor in the back seat of the cruiser, while not especially damning, is at least consistent with his having been under the influence of alcohol.

The visual recording of the heel-to-toe walk and turn and the one-legged stand is evidence from which a reasonable jury could find that Beechler was under the influence, even without the officer's accompanying testimony. Although the horizontal gaze nystagmus test is also on the recording, there is no way that a person watching the recording could evaluate Beechler's performance; officer Tate is blocking the camera's view of Beechler's face. But Tate testified concerning the test, and the fact that Beechler evidenced six out of the possible six clues for being under the influence of alcohol[sic].

Finally, Beechler's refusal to take the breath test is evidence from which a reasonable jury could infer guilt.

We conclude that this is not the exceptional case in which a jury has lost its way, and a manifest miscarriage of justice has occurred.

*State v. Beechler*, 2010 WL 1731784, at *9-10.

959, 969 (6th Cir.1983). In the context of a claim alleging a violation of due process, "sufficiency of the evidence" refers to the due process requirement that there be enough evidence introduced in favor of the prosecution for a rational trier of fact to find each element of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In reviewing a sufficiency of the evidence claim, a federal habeas court must defer to the trier of fact with respect to issues of conflicting testimony, weight of the evidence and the credibility of the witnesses. *Jackson,* 443 U.S. at 319; *Walker,*703 F.2d at 969.

Under Ohio law, however, a claim that a verdict is against the manifest weight of the evidence – as opposed to a constitutional claim based upon insufficient evidence – requires the appellate court to act as a "thirteenth juror" and review the entire record, weigh the evidence and consider the credibility of witnesses to determine whether "the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1983); *cf. Tibbs v. Florida*, 457 U.S. 31(1982). Since a federal habeas court does not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review, Petitioner's claim that his convictions are against the manifest weight of the evidence cannot be considered by this Court.

Claim five fails to provide a basis for federal habeas corpus relief.

**WHEREUPON**, Petitioner's motion to invoke the prison mailbox rule, Doc. 12, is **GRANTED**.   It is **RECOMMENDED** that this action be **DISMISSED.**

### PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation,* that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific

28

proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir.1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                        _s/ Norah McCann King_____
                                        Norah McCann King
                                        United States Magistrate Judge

February 16, 2012